## JACOB HOLBERG ET AL. *v.* E. S. JAFFRAY ET AL.

1. CREDITOR. *Right of debtor to prefer. Confessing judgment.*
   A debtor has the right to prefer a creditor by confessing judgment and thus creating a prior lien in favor of such creditor.

2. SAME. *Attorney of debtor acting for creditor also. Debtor secretly confessing judgment.*
   And the facts that the debtor employed an attorney to effect a preference of a creditor by confession of judgment in his favor, and the attorney acted for both the debtor and the creditor in accomplishing such purpose, and the further fact that the preliminary proceedings, waiving service of summons, docketing the case, etc., were done secretly, do not affect the validity of the judgment.

3. SAME. *Confession of judgment. Attachment. Sale of goods. Liability of sheriff for proceeds.*
   And the fact that the sheriff, when making sale of the debtors' goods under a judgment confessed, misled an attaching creditor by assuring him that he would retain the proceeds of such sale in his hands until the dispute between the judgment creditor and attaching creditor could be settled, and then turning over such proceeds to the judgment creditor, cannot affect the rights of the attaching creditor, his attachment having been levied on the goods before the sale thereof; for if the sheriff has paid the money to one not entitled to receive it, he will be dealt with as still having it in his hands.

APPEAL from the Chancery Court of Noxubee County.

HON. F. A. CRITZ, Chancellor.

In 1884 L. N. and H. C. Holberg were conducting a mercantile business in Macon under the firm name of L. N. Holberg & Bro. In December, 1884, the Holbergs began to fear their insolvency, and consulted and advised with their attorneys, Jarnagin & Bogle, in reference thereto. In January, 1885, Jacob Holberg, an uncle of L. N. and H. C. Holberg, who had loaned them about three thousand five hundred dollars, and was their surety to other creditors for about four thousand dollars, required his nephews to take an inventory of their stock, when it was discovered that they were insolvent. Jacob Holberg, desirous of securing himself, and L. N. Holberg & Bro., desirous of securing their uncle and certain

other creditors, together again consulted Jarnagin & Bogle, when the following plan was then determined on and carried out: The creditors of Holberg & Bro., to be secured, were to put their claims in the hands of Jarnagin & Bogle, and Jacob Holberg wrote to them to that effect, and they did so. Jarnagin & Bogle prepared declarations on the several claims, and five days preceding the term of the circuit court had the defendants, Holberg & Bro., to waive service and grant permission in writing on such declarations that judgment might be rendered thereon at the first term, and on the first day, of court. This was done in the presence of the circuit clerk and at the office of Jarnagin & Bogle. Thereupon the clerk took the declarations, went to his office, marked them filed, made an entry on his docket of the number of each case and the name of plaintiff, but left a blank for the names of the defendants, and then returned the declarations to Jarnagin & Bogle. When the docket was sounded on the first day of court, the name of the defendants was inserted in each case, the declarations read, and judgments entered thereon and enrolled, and on the day following, to wit, February 17, 1881, E. S. Jaffray & Co. and certain other creditors of Holberg & Bro., who were not included in the scheme above set out, on discovering it caused attachments to be levied on the stock of goods of Holberg & Bro., the same being the only property they had. On February 18, 1887, this same stock of goods was levied on under executions issued under the judgments above referred to.

The sheriff, being unable to secure insurance on the stock of goods, advertised the same for sale on ten days' notice. He caused an inventory to be taken of the stock, and this showed the stock to be worth something more than nine thousand dollars. On the day of the sale attorneys for the attaching creditors appeared and tried to have the same postponed, and gave the sheriff notice not to pay over any money to the judgment creditors, as they intended to attack said judgments as being fraudulent, null, and void. It seems that the sheriff gave them assurances that he would at least retain the proceeds of the sale. Thereupon the goods were sold to Jacob Holberg, he being the only bidder, for eight thousand dollars. By an arrangement between the judgment creditors, Jacob Holberg,

and the sheriff, the goods were turned over to Jacob Holberg, and in lieu of cash in payment therefor the sheriff accepted the receipts of the judgment creditors for payments on their respective judgments to an amount equal to Jacob Holberg's bid.

On September 3, 1885, E. S. Jaffray & Co. and other attaching creditors exhibited this bill against L. N. Holberg, Jacob Holberg, B. M. Walker, sheriff, and the several judgment creditors, in which they alleged that the whole proceeding was a fraudulent plan or scheme to enable Jacob Holberg to buy in the stock of goods and get them cheap, and that the sheriff and the other defendants colluded together to effect this purpose. The bill asks that the judgments be held void as against complainants, that the sheriff be held responsible for the proceeds of the goods, and that personal judgments be rendered in favor of complainants against the sheriff and Jacob Holberg.

The Chancellor by his decree granted the prayer of the bill. The defendants appealed. The opinion of the court states the effect of the evidence on the question of fraud, and as to the value of the stock of goods.

*Jarnagin & Bogle,* and *Brame & Alexander,* for the appellants.

The validity of the judgments against L. N. Holberg & Bro. is not seriously questioned by opposite counsel. In the bill no objection was urged to them, except that the declarations on which they were based were " never *filed* " and that they were obtained by " imposition on the circuit court." That the declarations were duly filed in the office of the clerk of the court, and that the waiver of process and appearance of the defendants in each case was also duly filed, is not only shown by the records and the judgments themselves, but by the ample testimony introduced by the complainants as to this. With all deference to counsel, we must say that it looks like folly to complain of the secrecy of a thing that might have been done openly with impunity. Without having appeared previously, and without having given other creditors or any one else any notification, the parties could have appeared in court for the first time on Monday morning and confessed judgment. If this had been done and the announcement had been made

to the other creditors like a clap of thunder from a clear sky, what would have been their ground of complaint at it? *It is not alleged or intimated that the debts were fictitious or simulated.* They were each and all *bona fide* debts, most of them long past due. As said before, we do not understand that counsel seriously contend that the judgments are void. But as to this see *Byrne* v. *Jeffries,* 38 Miss. 533 ; *Swain* v. *Gilder,* 61 Miss. 667.

But the burden of the song is that Messrs. Jarnagin & Bogle, the attorneys who obtained the judgments, were, or had been, *the attorneys of the defendants, Holberg & Bro.* This fact seems to have had a great bearing in the case, but how it could possibly affect the regularity or validity of the judgments we are wholly unable to see. If the suits were based upon honest debts, and the purpose was to secure payment of the same out of the debtor's property, what right had the court or other creditors to look into the matter of the previous relations existing between those lawyers and the debtors? The rule invoked by counsel would debar an attorney employed by a debtor to draw an assignment from representing creditors preferred therein. What possible objection is there to the very common practice of a debtor having his own attorney to bring a suit against himself to obtain judgment in favor of a creditor he desires to pay or secure? But here, while Jarnagin & Bogle were consulted by the debtors, Jacob Holberg was their real client, and in whose behalf they were mainly interested.

On the subject of the haste and secrecy attending the procurement of the judgments, we think it unfortunate for appellees that they cite and rely upon the case of *Surget* v. *Boyd,* 57 Miss. 485.

The theory of the complainants was that the judgments were obtained and used in pursuance of a conspiracy between the parties thereto, and that the sheriff lent himself to the scheme. A conspiracy for what purpose? To have the stock of goods of Holberg & Bro. *sold for less than its value in order to cut out the other creditors.* This is the sum and substance of the bill. It asserts no other theory and makes no other allegation. At the threshold of the discussion on this branch of the case, if it is shown that the

goods were legally and fairly sold and brought a good price, it would seem that the whole theory of the complainants is broken down. If we are right in assuming that the judgments were valid, we may refer to the incontestable proof that the sale was properly made, the property bringing a fair price, and close the argument right here.

*L. Brame*, of counsel for the appellants, argued the case orally.

*Orr & Sims*, on the same side.

Appellants did not make an issue as to the debts of the judgment creditors. The bill does not aver that the debts were fictitious. Even in an unsworn bill the complainants would not question the integrity of these debts.

Nor was Jacob Holberg guilty of any fraudulent intent in having them protected. He did nothing. Jarnagin & Bogle and the circuit clerk did everything of which the complainants—appellees—complain. The testimony shows that the acts complained of as fraudulent were the acts of honorable attorneys, and the plan adopted by them to prefer creditors was perfectly legitimate.

*J. A. Orr*, of counsel for the appellants, argued the case orally.

*Rives & Rives*, for the appellees.

1. L. N. Holberg & Bro. brought the suits against themselves by their own attorneys, who were the ostensible attorneys of the suing creditors.

"A collusive suit is one in which the parties, who occupy ostensibly adversary positions are, in fact, in accord, and whose real though concealed purpose is to accomplish the same result." *Hyman, Lichstein & Co.* v. *Stadler & Co. et al.*, 65 Miss.

But these suits at law were worse than collusive suits. The defendants did not merely consent and agree to act in collusion with the plaintiffs, but they initiated the proceedings, and it was the brains of their employed attorneys who managed the whole scheme.

"Irregular and improper conduct in procuring judgment to be entered is a well-settled ground for vacating it." Freeman on Judgments, § 97.

"Where the machinery of a sale on execution has been resorted

to in order to get the title of a debtor's land into his wife, equity will order a sale of the land to pay his debts." 1 Story's Eq. Juris. 246, note 3.

" If there is fraud or collusion in prosecuting actions at law equity may interfere and enjoin or correct the wrong." 2 Story's Eq. Juris. 793, note 3.

" Whenever a judgment is procured by fraud or collusion it may be attacked in a collateral proceeding by any third party injured by it." Freeman on Judgments, § 336.

The judgments at law in this case are in many respects different from that in *Byrne, Vance & Co.* v. *Jeffries*, 38 Miss. 533. In these cases the declarations were never filed, though they were so marked. *Cooper* v. *Frierson*, 48 Miss. 310.

These judgments were mere securities. The judgment creditors parted with no new consideration. They are bound by the fraud of L. N. Holberg & Bro., if there was such fraud. They are not protected by their own innocence, if they were innocent. *Surget* v. *Boyd*, 57 Miss. 489, and cases there cited.

2. If the sheriff had made no promises to us, if he had not sought to delude us, we might have taken other steps. We had the right to presume that he would do his duty under the law. The sale was to be and was made under all the writs—attachments as well as executions. It was the sheriff's legal duty to require cash of the purchaser, and then to hold the money to abide the direction of the court from which all those writs had issued.

We have never understood it necessary, or even proper, for attaching creditors to give the sheriff a bond to indemnify him against liability arising from his compliance with the statute. Code 1880, § 2462. Whatever motive may have prompted the sheriff's action, it is evident that he, instead of acting the upright, honest stakeholder between the contending parties, intrigued with and became the partisan of one side, and in their supposed interest misled and deceived the others.

The sheriff must take the consequences of his conduct. He must answer in equity for the money he should have in his hands.

The course taken by the sheriff, the Holbergs, and the judgment creditors shows conclusively that the plan was, as we have alleged, to put the stock of goods in the hands of Jacob Holberg.

These suits were instigated by L. N. Holberg & Bro. and Jacob Holberg through their attorneys, and as a part of the plan by which the stock of goods was to be transferred to Jacob Holberg, and by which these attaching creditors were to be defrauded.

*R. G. Rives,* of counsel for the appellees, argued the case orally.

*Evans & Baldwin,* on the same side.

1. While the course of proceedings adopted in this case may be lawful as the result of *bona fide* judgments—*bona fide* obtained for the purpose of enforcing the payment of debts, it is so because it is the right of the active pursuing creditor given by *law to him,* and is the misfortune of the debtor.

But will any one say, that "where it is the debtor's doing," he can do that by secretly obtaining to be employed the machinery of the courts of justice to consummate what the very courts would condemn as a fraud if done otherwise.

It is hoodwinking the courts into becoming the instruments of the very thing the very court would have declared a fraud. *Surely, surely, this cannot be done. Mitchel* v. *Kintner,* 5 Pa. St. 217; *Graffam* v. *Banger,* 117 U. S. 186.

The value of the goods so sold in bulk is variously estimated; our witnesses put them about thirteen thousand dollars. The evidence varies from about nine thousand dollars to thirteen thousand seven hundred and eighty-three dollars.

2. We are free to concede that when the law gives a remedy to a creditor, that he is free to use that remedy, and his use of that remedy does not raise any imputation or presumption of fraud. One creditor can use diligence and secure his debt; he can use activity and secrecy in maturing his plans and promptness in carrying them into execution, and be guilty of no wrong. These propositions are not denied. But the question presented by this case is different. The proposition we lay down is plain and simple: That when a *creditor surrenders* his rights and remedies to the *direction* and *control* of the *debtor,* and the debtor by the *use of*

those remedies and *his control* of those remedies cannot only effect a *preference which is lawful,* but by virtue of the peculiar surroundings of the case (it being a small town, with but few men *wanting* to buy or *able* to *pay cash* for a large stock *in bulk*) can accomplish a result prearranged and inevitable, and that result involves a *sacrifice of the stock of the debtor* and the reaping of the benefits of that *sacrifice* by a *near relation* of the *debtor*, that the *creditor* has by *his own act* become a party to a wrong, and the courts will so hold.

*George Evans*, of counsel for the appellees, argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

L. N. Holberg & Bro. had the right to prefer creditors, and did it by consenting for judgments to be given against them, so as to create liens in favor of the several creditors on their goods, and thereby secure precedence of satisfaction to them out of the goods. In this there is nothing forbidden by law, and we find nothing in the mode of obtaining the judgments which the law condemns. The secrecy observed in reference to docketing the cases was a precaution, merely, against publicity which would incite attachments and defeat the scheme of securing precedence to the creditors preferred, and was no more than characterizes the movements of failing debtors who make preferences by assignment or by sale of property.

We have failed to discover in the voluminous record any evidence of fraud or other state of case than the very common one of insolvent debtors anxious to prefer certain creditors, and doing it in the way proposed and conducted by counsel, and there is nothing in the fact that these counsel acted both for the creditors and the debtors. The question is, what was done, and not by whom it was effected. The evidence shows that the goods were sold for a fair price, much more, probably, than they would have brought under other circumstances; and we have no hesitation to say that had Jacob Holberg bought the goods at the price paid, at private sale, in payment of what was due him and others, and taken possession of them with-

out any judgment, he would have obtained an unassailable title to them on the facts presented by this record. The charge of the bill that there was a scheme to enable Jacob Holberg to acquire the stock of goods at a low price is unsustained. It does appear that counsel for attaching creditors were misled as to the money arising from sale of the goods being and remaining in the hands of the sheriff, but that made no difference in the rights of any party. The money was considered as in the sheriff's hands. He was responsible for it, and if he paid it out wrongfully, or accepted as money the receipt of one not entitled to it, he could and would be dealt with as having it in his hands.

*The decree is manifestly wrong and is reversed, and the bill dismissed, and judgment here against complainants for costs in both courts.*